We'll hear argument first this morning in Case 13-1402, Carey, Secretary of State, v. Fazio, Din. Mr. Kneedler? Mr. Chief Justice, and may it please the Court, this Court has repeatedly held that the power to exclude aliens is inherent in sovereignty and necessary to defending the nation against encroachments and dangers. It is a power exercised by the political branches of government. Respondent's decision to deny a visa by a consular officer because he was found to be inadmissible under the terrorism provisions of the Immigration and Nationality Act. It is firmly established that as an alien outside the United States, he had no right under the INA or the Constitution to seek judicial review of that determination or for a greater explanation of the grounds given. Could I ask you a question? Assume the following hypothetical. You had an erroneous name, meaning or there's a duplicate name, a terrorist and a non-terrorist alien. What you're telling us is that there's no remedy whatsoever for the alien to come in and try to show someone that he's not the guy who's the terrorist. At least two responses to that point. First of all, no one is excluded under the terrorism provisions of the Act because their name appears in a database. The databases are assembled as basically raising flags that might warrant further inquiry. I'm informed by the State Department, and as we say on page 49 of our brief, in any case in which an alien is going to be denied entry under the terrorism provisions, there is a request to the State Department in Washington for a security advisory opinion, which entails sending out notice to interested agencies who may have intelligence about the individual and report it back to the State Department for an advisory opinion. And so it will not stop them. I have a real problem, which is that's what we were told after September 11th. And we have evidence that people were kept for months and months and months, and some were released after there was further probing by the courts, and it was determined that people had been erroneously identified. So I'm not challenging good faith, but I'm just questioning how someone caught up in an administrative nightmare, you're suggesting that the wife has absolutely no interest in her marriage, in not having the government arbitrarily keep her spouse out. And she obviously has an interest, but she is affected only indirectly by the denial of the visa to her husband. Spouse is to her husband. Kennedy, it seems to me that you're fighting the hypothetical. You basically say, well, that's not going to happen. Suppose it happens. There are two Mr. Smiths or whatever the foreign name is, and they just get the wrong one. It seems to me your position is that the alien has no standing, period. I think it's clear under the doctrine of consular nonreviewability, which is one subset of the recognition of Congress's broad power over the exclusion of aliens, which includes conferring the power on executive officers. The Court has said that. And then we get to the question of whether or not the wife, in this case, has at least a minimal right to make sure that the identification is correct. And you say as to that? There is no right of judicial review because the consular the doctrine of consular nonreviewability applies equally to her. In fact, it would be quite – it would be a license for circumvention of that doctrine to allow judicial review. Ginsburg's question is, is there no exception to the consular nonreviewability doctrine? That is, occasionally people make mistakes, as Justice Sotomayor pointed out. Some consuls have been known to have a bureaucratic mentality, and some may act for improper reasons, but you are sticking to the position that consular determinations are not subject to judicial review under any and all circumstances, no exceptions. That is our position with respect to a consular officer having a bureaucratic point of view. I should point out that a visa is not denied on a way that can't be corrected by additional evidence without it being approved by a supervisor to the consular officer. So it's not going to be a bureaucratic issue. Sotomayor's question is, if you have a wife in the United States, you have no rights whatsoever to challenge the arbitrary or a statement by the government, we believe your husband's a terrorist, you can't stay with him, only the husband could challenge them? Someone in the United States? Yes. In the United States would be different, although it would not confer rights on her, but the husband. Sotomayor's question is, if you have a wife in the United States, you have no rights  your husband's a terrorist, you can't stay with him, only the husband could challenge them? Ah, so you're saying in that situation marriage has – gives her no rights to say you're interfering with my marriage by arbitrarily keeping my husband. I think that's – I think that's what you're saying, that you have standing to appeal a wrongful conviction of her husband, right? That is the point I was going to make, and, in fact, that – In a regular criminal case, and he doesn't want to appeal, and she says, oh, I'm going to be deprived of my husband, so she has a right to appeal. Is that – is that the law? It's not the law, and, in fact, the Court made exactly that point in the O'Bannon case that we cite in our briefs. O'Bannon arose in a different context, but the Court, in announcing its rule that someone indirectly affected is not deprived of liberty, used that very example. I understand the O'Bannon case. I think it's in point for you. The Mandel case, you say in your brief, pages 38, 39, 40, that the Court in Mandel simply assumed there was that right.  He says recognition that First Amendment rights are implicated, however, is not disposited. Then he goes on to find no relief. I read that case as saying the professors had standing. You don't read that? Oh, we're not saying they didn't have standing to make a First Amendment claim. They did, and we didn't argue or are arguing here that she doesn't have a right to go to court to make her constitutional claim. We're just saying it fails on the merits. She – I don't think it could seriously be contended that it would be unconstitutional. Kennedy, you say that she has the right to contest the denial of the visa. No. No, we don't. All I'm saying is she's entitled to come into court to make the argument that she's making here. We think her argument loses, and therefore she has no right to challenge, to have the Court review the consular's denial of the visa abroad. Well, you always have the right to come into court to say that you think you have a right to contest, and the Court says you don't, and you throw it out. Right. No, but I think that's not the way you can read Mandel. Well, I think the predicate discussion of the First Amendment there was the government was arguing there's no real First Amendment problem just on First Amendment terms, because you could always hear the same information by reading a book or telephone or something like that. And the Court said the First Amendment interest, looking at First Amendment interest, doesn't disappear in that situation. Suppose I read the Mandel case to say that the professors have a right to contest the denial of the visa. Suppose I read it that way, and then the Court at the end of the day says the visa was properly denied. They lose on the merit, but they have the right to contest. They have a right for a reason, to a reason. How is that different from this case? If I read it that way, then it seems to me that the wife here has the right to demand a reason. First of all, Mandel involved a decision on a waiver, not a decision by a consular officer abroad to deny a visa, which is really right at the teeth of the consular non-review bill. I don't see why that doesn't cut the other way, Mr. Kneedler. You make this argument several times in your briefs, but I would think that review would be at its nadir in the waiver authority, because their enormous amount of discretion is given to the executive official. Whereas, with respect to consular decisions over visas, Congress has set out clear rules for what those consular officials are supposed to be doing. And it seems to me that the reason for review in that context, where you're trying to figure out whether the consular official has in fact accorded with the congressional determination of who's entitled and who's not to a visa, would be all the more important. Kneedler, Well, I don't disagree. We don't think there should be review in either case. I think part of what might have been motivating the Court in Mandel was that the discretionary denial of the waiver might have been based on the characteristics of the U.S. citizen seeking it. There can't be any claim like that here. This — this — the terrorism grounds go entirely to the — for a visa denial go entirely to the characteristics of the alien abroad. But beyond — beyond that, what you're describing is the very thing that the doctrine of consular non-reviewability is designed to prohibit judicial review of. Court says that no matter what, is that — I mean, a woman is married, an American woman is married to a foreign person, asked for a visa. She has undeniable proof, the most — any proof you want, that the reason it was denied is because the consular official believes that husbands and wives should live separately, or for racial reasons, or for First Amendment reasons. Undeniable proof. If you're in a position that it doesn't matter if they decide, the consulate,  there is no review. Is that your position? My position is that there is no judicial review. I — Are you saying — I don't want a clear answer to my question, because what I'm trying to do, obviously, is make the most far-out case I can think of. And — and I want to know if the government of the United States thinks that if it is the policy, even, of the consular of the United States that husbands and wives must  Well, it is. Is that the position, or is it not? That it — that would be our position? All right. Now, if that's your argument, yes. Let me give you an equally absurd hypothetical, okay? Oh, I don't know if mine is so absurd. No, no, no, no, I'm saying the feeling that the law can't be that. Assuming the man is not married, and there is no wife who comes in and can make these points, but assume, likewise, there is incontrovertible evidence that he was denied admission because of his race or because of some First Amendment statement he had made, or for whatever other reasons Justice Breyer wants to bring forward, your position would be, right, too bad. I'm not worried about that case. I'm worried about that case where there is an American citizen who is married, and that the decision of the consular official will prevent her, no matter how ridiculous — and take all of Justice Scalia's points to make it ridiculous as you want. But the result of this is that an American citizen either must live separately from her spouse forever or must give up her right as an American to live in her native land. Now, that seems to me to be the government's position, and I just want to be assured that it is. That is our position. Let me just say one thing. Scalia, I think you knew that. No, I didn't, actually. If I may add one point here, there is no claim that the ground for the denial of the visa is itself unconstitutional. The ground that was given here was that he had engaged in terrorist activities. There can't be any serious claim that it's permissible to exclude someone for engaging in terrorist activities. Terrorist activities are defined in this statute to include such things as, let's say, you're in a particular country where this could happen. You decide to keep overnight at your house and let him stay two people who sometimes go out and solicit funds for any one of the 40 organizations on the list. You've given material aid to two or more people, organized or not, who, in fact, themselves solicit funds for one of these 40 organizations. Now, that isn't much, and there are about 100 other words here, 200 words that seem to be. Scalia, for me, well, I'm just saying it isn't obvious to me that you can not deprive a person of even telling him what the reason is for saying he falls within this section. Well, on that point, Knauf v. Shaughnessy and Mazzei are controlling. In those situations, aliens who had even reached our borders were denied entry on the basis of confidential information that was deemed necessary for the security of the United States. A forgerary here, where the aliens are outside the United States, where the alien is outside the United States, Knauf requires the conclusion that neither he nor his partner is responsible for the alien's escape. And if that's the explanation, then the executive offerer's belief is appropriate. Alito, could I come back to Justice Breyer's earlier hypothetical? Suppose there were a case where there is incontrovertible proof that the consular officer denied the visa for some incredible ground based on racism or the belief that husbands and wives shouldn't live together. Suppose there's a tape, a video recording or audio recording of the consular officer saying this is what I believe and this is what I do when I pass on these visas. Would there be no administrative avenue of relief if that information was submitted to the State Department? Would there be no opportunity to get a correction of the visa denial in that way? Of course there would. And that's what Congress decided in 1952 by not establishing a centralized review of all visas which could lead to judicial review, which is what Congress was specifically concerned about. How can you get that relief if you don't tell the person what the reason is? It won't be denied. The visa, as I said, the visa will not be denied under 42 CFR, I mean, 22 CFR 4261 unless it is reviewed by a superior. So one individual consular officer's approach to a case is not going to be sustained. It will be reviewed by someone else. But that can't be, that process can't be initiated by the relative. That's an internal, you have described an internal check, but as in this case, the  Justice Alito, I think we have to assume regularity that the supervising consular officer would be asked. But can the person, the relative who is claiming preferential status, can she initiate such a review? She can't. It's entirely internal. She has no, she has no, there's no procedure that gives her an entitlement and properly so because it's not about her, it's about him. But she could certainly bring the information to the attention of the State Department. And in fact, in this case, she brought it to the attention of her representative in Congress, who in turn inquired to the State Department about it. She could write to the State Department. Ginsburg's representative was given the same answer, citing the statute and saying that we don't disclose any particular. Right. But that's the system Congress set up. Congress specifically said when it enacted this provision in 1996, it concluded that the executive should be entitled to withhold the grounds of the basis for denying a visa if that would adversely impact the national security, and that descends directly from NALF and Mazzei. Sotomayor, if Mandel did control this case, what argument would you make, or could you make an argument, that you met the Mandel standard? And as I understood the Mandel standard, it wasn't that high. It was you have to provide a facially legitimate and bona fide reason for your decision. Okay. If I could make two points with respect to Mandel controlling. The Court specifically said in Mandel that it was leaving open the question of whether there would be judicial review if the Attorney General had not offered any explanation at all. It concluded that the explanation that appeared in the record was sufficient if any explanation at all was required, but it did not hold that it was necessary. So if this case is controlled by Mandel, we're in exactly the same position. There is no precedent of this Court saying that an explanation to people in the U.S. is required. It was just found to be sufficient in that case. Now, applying that test, we think that the reason given here plainly satisfies the facially legitimate standard. What the consular officer did was cite the statutory provision under which he was found to be inadmissible. Citing the statute is by definition facially legitimate because it is the standard that the consular officer is intended to apply. So even if we get that far down. What's the level of generality or specificity that you have to cite? Suppose they just said, well, you know, this was done under 1182. Would that be sufficient? As a constitutional matter, we think it would be sufficient, yes. And again, look. We did this under the INA. Is that facially legitimate?  I think so. But here we have something that's a reason. So really it's a reason that's not a reason at all. At some point, I mean, that's nice. You did it under the INA, and that counts as facially legitimate? But here we have the specific paragraph dealing with terrorism. Breyer. It isn't. This is actually a serious point. I didn't mean it facetiously. And go back to Justice Alito's point, which I think was quite a good point, frankly. The statute that you're talking about, labeled terrorist activities, is printed in your appendix from pages 7A to pages 14A. It covers everything from a person who is a member of an organization that's about to throw a bomb to somebody who says, as I said, once has two members of some organization or different organizations sleep on his floor, knowing that they solicit funds on other occasions for these people, the bad ones. Now, he just wants to know what subprovision they're using because he wants to say, as sometimes happens, to others in the State Department, your counselor over here in X city gets a little carried away. They're overly risk averse. They're interpreting one of these hundreds of words in a way that's really wrong. Now, all he needs to know is what subsection under this 7-page section is at issue so he can make the internal appeal that Justice Alito has described. Why not? I mean, does this fellow have a wife or is this? Yes. Oh, it's a wife that's making the point. I want to make one thing very clear, again, with respect to exclusions under Paragraph B. It is not done by the consular officer alone. No one can be excluded under subparagraph B on terrorism activities without a reference to the State Department for a special or a security advisory opinion, and that review since at least 2010 has included review by a lawyer. So this is not some situation that could be decided by a rogue consular officer in the field. But what's your question? Mr. Kneedler, could you give us an idea before you conclude about what has, in the consequence of a decision, the Ninth Circuit in this Bustamante case, that was 2008, what has happened in the Ninth Circuit between 2008 and 2014 with respect to these relative applications? How have they fared? There have been a number that have arisen. There's the Ibrahim case that was that is cited in the papers. There's a case called Gokar, which I think involves extending DIN to a father. There are other cases which involve children, as I recall. But if this Court were to hold that a family member has a right to insert herself into removal or into proceedings involving an entirely independent human being responsible for his own conduct, then I think we can anticipate a number of cases. Ginsburg. But in the cases that we have, you cited extending it to a child, but have any of them held that the government failed to show a facially legitimate bona fide reason? The Ibrahim case required the specification of a particular subsection based on DIN, said that there had to be a particular subsection of B. And again, I want to step back. In Knauff v. Shaughnessy and Mazzei, the Court held that someone could be excluded simply by the Attorney General saying there's confidential information and there is no right to a hearing. There was no suggestion there that the government was required to at least be somewhat specific in telling the person the basis for the removal. These are the outside. Kennedy. Do you think that in the instance, suppose that Justice Breyer asked, this particular subsection has to be cited, that if the counsel were to cite that, this might give some indication as to our intelligence-gathering capability? Absolutely. That's the very reason why Congress said that it's not necessary to give the particular subsection, or, frankly, to cite paragraph B at all. It could just be under 1182a. And here, whatever interests the wife has in this situation, they are derivative and indirect, even if this Court is going to credit them with some force here. They are derivative and indirect as weighed against the powerful interests of the Of course. So in the situation that Justice Kennedy just mentioned, where there is even a risk of harm to some intelligence-gathering or other national security interest, can't the government come to the judge and say just that? And aren't there methods by which you can allow a judge, even in camera, if necessary? The case should review a matter where there is a national security interest at stake. It is exceedingly rare for the government to be put in a position where it has to submit classified information to a court. There are situations that arise in a domestic context. The courts are very good at this stuff, aren't they, at assessing the level of danger to operatives? This Court has said that they're not. And in situations in the domestic context, it may be necessary to allow for some consideration of classified information because the person involved has due process rights and can insist on some information. Here we're in a situation where the person directly affected, the person involved, an alien abroad, has no rights of his own to know what the basis for the government's action is. I'd like to reserve the balance of my time. Thank you, Mr. Kneedler. Mr. Haddad. Mr. Chief Justice, and may it please the Court. There was substantial discussion of the doctrine of consular nonreviewability thus far. But one point that did not emerge is that this Court has never articulated the doctrine in the way the government has presented it today. This Court has never said that the decisions of a group, a large group of officials of the executive branch are somehow immune from judicial review in every instance because they are the decisions of certain officials, consular officers in this case. And the record is that the administrative procedure act, it has a provision exempting from review action committed to agency discretion by law. And I think what the government is arguing is that this, you know, this law commits this stuff to the discretion of the consular officials and the State Department. And I don't think the APA would get the government where it needs to go in this case, Justice Scalia, because ours is a constitutional claim. It's not raised under the APA. And as came out earlier in the discussion, as Justice Kagan pointed out, unlike the situation in Mandel where all the Attorney General was doing was implementing a statute that gave him, quote, unquote, discretion to waive a denial of a visa here, we have an extensive statutory set of exclusions. And the government has acknowledged in its reply brief that it does not view its consular officers as having discretion in how they apply and implement the specific terms that Congress has set forward. Roberts. Roberts. To get to your constitutional claim, explain to me the difference between the marital basis in this case and, say, a parental basis. I mean, if the individual here was a child, would the parent in the United States have the same rights as the spouse? If the U.S. citizen parent were trying to get an immigration visa for his or her son or daughter, yes, on our understanding of the liberty interests that this Court has. Okay. So it's spouses, it's parents, I suppose it's children as well, right, if the parent is the one who's being denied access? A child in the United States would be able to get it. Certainly a minor child, Your Honor, yes. If the Court looks to the grounding cases that we cite, the Meyer case, the Pierce case, Griswold, the cases the Court's very familiar with, those cases involve the right to marriage and to raise a family. And those — Brother and sister? Brother and sister is a — I think the Court would look at, in all likelihood for the constitutional right, would look at whether the brother and sister were part of a family unit that would be living together. That seems to be an important value that the Court looks at. What about someone who wanted to marry the immigrant? Not yet married, but, gee, you're depriving me of marital bliss. I want to marry this person, and I can't do it. Would that be enough? I don't know that that would be enough, Your Honor. But certainly in this case, where the United States has recognized that the Respondent has a valid marriage, and there's no question at all about the validity of the marriage, we are in the heartland of what this Court has recognized is an important constitutional right. Ms. Sotomayor, can I ask you how exactly this case became this kind of constitutional case? Because I had thought that originally this case was brought as an APA challenge and that it was kind of converted into this constitutional claim by the Ninth Circuit. Is that an incorrect understanding? I wouldn't describe it that way, Justice Kagan. The complaint had three causes of action. The third was an APA cause of action, but the first two were not. And at the time the case was brought, the Bustamante decision had been decided by the Ninth Circuit, and so there was a basis for bringing the constitutional claims as well as the APA claim. And indeed, it was the constitutional claim that we pressed in the Ninth Circuit. Can you explain how we get to the constitutional claim that she has a right to live in the United States with her husband? She has a right by statute to put him at the top of the queue, right? She can be – before he can apply, she has to get him the preferential status, right? That's correct as a matter of statutory law, Justice Ginsburg. But our claim is not that her right arises from the statute and from the rights conferred by statute. Our argument is that her rights arise as a constitutional matter from her marriage. So she has married, and you rely on the right to marry includes the right to live with one's spouse. What do you do with Turner v. Safley? The Court held that the prisoner had a right to marry, but certainly not a right to live with his spouse. We believe we're right on point and consistent with Turner, because as we describe the right, it's not the right of entry of having her husband admitted any more than Petitioner in Turner's circumstance could say, I have a right to have my husband released from prison. All we're saying is there's a liberty interest in not being arbitrarily denied the opportunity to live with your spouse through the erroneous application or interpretation of law by an executive decision. Well, it's odd to presume that there's a fundamental right and then say, well, all we're saying is it can't be arbitrary. You can't measure arbitrariness until you first define the right. You just want us to skip over that critical step. Well, then I think you're reasoning backwards. Well, let me try to address it then, Justice Kennedy, so that I don't skip that step. As we've laid out in our brief, there is a right that we believe is inherent in the right to marry and to raise a family, which this Court has recognized, inherent in that right. For that right to have meaning, it presupposes that the husband and wife can live together. It would be unconstitutional, then, for Congress to eliminate the provisions of the current immigrations law, which says that if the wife or the husband is in this country, the spouse can come in. It would be unconstitutional for Congress to say we have immigration quotas for certain countries, for certain things, and whether you have a husband or wife in this country has nothing to do with whether you get in. That would be unconstitutional. The Court would review such a law were it ever passed under the same standard it used in Fialo, which is the facially legitimate and bona fide standard. There is, and this Court has recognized. It's facially – you would have to say it's unconstitutional, wouldn't you? If your argument in this case is correct, that would be unconstitutional. We would certainly argue that, Your Honor. The Court would review it under the Fialo standard, and the Court would need to find at least, if it applied and followed Fialo, just as there was a constitutional challenge to the lines Congress drew in that case. And you would say the same thing if Congress did not give a visa preference, putting the spouse to the head of the line? You'd say the same thing? I don't think we would advance that argument, Your Honor. We have conceded that Congress has broad latitude, broad latitude, plenary power, as this Court has stated, to set the terms and define who comes in. It's the application, Mr. Pachino. But it can take a long time, depending upon the nature of the preference, for somebody to get to the front of the line. Under some preferences, 20 years after you apply, then you get to the point where you can actually get a visa to come in. I would assume that that would not be satisfactory to you because the marital relationship would be interrupted for 20 years. Were those the facts, Your Honor, at the time Congress passed such a law eliminating all spousal preference, then we may indeed have a strong claim, even as to the elimination or changing of the preference. But our point is simply this. We are not dealing here with a challenge to Congress's line drawing. We're dealing with a challenge to the application. Well, I understand that. But my point is that the logic of your position gets to reordering the visa preferences. If you say the fact of the marital relationship gives these certain rights, then it would not keep the husband and wife apart. It seems to me that goes to the length that you have to wait for your visa. So it does go to the tiniest reordering of the immigration preferences. Your Honor, a tiny reordering, we don't think, would be difficult at all for this Court to accept under the facially legitimate and bona fide standard. Well, okay, but I mean, my point is it goes to the big reordering as well. I mean, you have to change, depending upon Congress's ordering of the preferences, you might have to change a great deal. Well, as this Court recognized in Fialo, the Court was unwilling, as its footnotes 5 and 6 made very clear, the Court was unwilling to say that there would be no check whatsoever by this Court in any of any change Congress might make. Now, the Court was extraordinarily deferential to Congress in Fialo, but it still exercised review. May I ask you how this would play out as a practical matter? I — Congress apparently believed that requiring the government to specify the particular subsection under which the visa was denied had the potential of providing information that might be damaging to the security of the United States. So let's say that the government comes in and says that, in this case. They say, we can't, we don't want to tell you which of these particular subsections this action was taken under because we believe that under the circumstances of this case, revealing that information will tell, would tell the alien, if the information reached the alien, how much we know about him and possibly how we found that out. So you say, what, the information would have to be provided to the judge alone? Would the judge provide it to the alien? Would the judge provide it to counsel? How would that work out? Well, I'll explain how it would work out as a practical matter. I do want to note that the government has had now the opportunity to file seven briefs at three levels of the court system and has yet to say that that is an issue in our case. But we're going to say that. Alito, Congress thought it was an issue in all of these cases, but tell me how it would work. And so in the cases where it was an issue, and the government has conceded it's not always, but where it is an issue, the government has, and we've laid it out in footnote 20 of our brief, the government has memoranda that give guidelines for how the information is treated. Because these same provisions come up and are justiciable in removal context, in asylum context. So the government goes to the judge and says we've got some confidential information here, we want to present it, we want to redact the confidential information, file it under a protective order, the court can review it. If counsel for the individual has a security clearance, then the counsel can review it. If the counsel doesn't, then the court concludes ex parte review is necessary, then ex parte review happens. Ultimately, we can't control in a given circumstance what the national security implications are. If there are significant national security implications, then that applicant may never find out the reason. But can the judge say I'm not going to tell counsel? I believe the government that revealing this information would have an adverse effect on national security, I'm not going to tell counsel. Yes, the court could do that, and that's what the Ninth Circuit anticipated. All right. And what if the government thinks that the court has made an, I am going to tell counsel, and I trust counsel. What if the government has a problem with that? I imagine the government would press that argument both to the court and, if need be, would try to take an interlocutory appeal to have that decided. Do we have to go into all that here? Breyer. I mean, I thought, I mean, take the obvious thing, which would be most adverse to you, or the second most adverse, would be a possible answer, is to say all the government has to do is to tell the judge, judge, if we tell you which of the 25 different subsections apply here, that will hurt national security. And that's the end of the case. But your case, you say, is a case where the government won't say that, because they're honest, when they get into court, they'll tell the truth, and if the truth is there is no adverse effect on national security, we at least would like to know that. That will help us. But they won't give us any reason, none. And if you go back to King John and the rule of law itself, certainly part of that is when you take action that adversely and seriously affects the citizen of the United States, the norm is you at least have to tell them why. I mean, is — are you arguing for more than that minimal position in this case? Do we have to go beyond it? I don't think you do, Justice Breyer, because at page 52 of Petitioner's brief, they concede that some of these denials under 1182a3b do not involve sensitive  They admit that some cases fall in that. Kagan. Well, Mr. Haddad, suppose — you know, suppose that I agree with you that the Mendel standard should apply, so it's facially legitimate and bona fide. Why isn't that met here? Why hasn't the government actually come up with a facially legitimate reason when it said 1182a3b? Well, I think as your questions to my colleague illustrated earlier, Justice Kagan, all they have done is cite authority that Congress has given them to adjudicate and decide eligibility for a visa. They have not said why the statute applies to this particular applicant. And it can't be a facially legitimate application of the statute unless you know why it's being applied. Well, gosh, I would have thought that it can't be a legitimate application of the statute unless you knew what it was, why it was being applied. But the facially legitimate actually is a lesser standard than that. It's just like, you know, on its face. On its face, it's legitimate because they're acting under the authority that the law gives them according to them. Well, here's an example, Justice Kagan. If the Court looks, for example, at page 13a of the government's opening brief, the statute that was referred to earlier this morning, the Court will see that Congress wrote in to the eligibility criteria in certain circumstances an opportunity for the applicant, having received notice of the reason, to rebut, with clear and convincing evidence, the stated reason for the exclusion. On its face, we have no idea whether that or one of the other provisions that allows a rebuttal was the one invoked here. I thought that the statute includes a provision that notice of the reason need not be given in the case of a national security. Yes, Justice Ginsburg. That was the status of the statute before Congress added these provisions that allow for a rebuttal. So in our view, it makes — it would make the statute nonsensical if one were to think that Congress was adding a right for rebuttal to a statute that barred notice. All 1182b3 does is say that it's not required in the normal course when you announce the decision to tell the applicant what the explanation is. So would you please answer Justice Scalia's earlier point, which is, are we going to get a slew of lawsuits from wives saying that their husbands were treated, had an unfair trial, or were unfairly accused? I can't imagine that you would, Justice Sotomayor, and here's the reason. It won't happen because it hasn't. Because tell me what the argument would be as to why that case would not be sustainable. The case would not be sustained because in every case of a criminal conviction, to take that example, there will be a conviction. It will be according to the rules of due process that this Court has elaborated. And that was a statute. The husband may choose not to appeal. The husband may choose not to appeal. He has a death wish or whatever, and he doesn't want to appeal. And you're why would the wife not be able to appeal? Because at the time of the conviction, whatever rights the wife may have had would have been extinguished by the conviction, which was final. Is that right? It certainly is distinct from a situation like this where there is never any process at any time. There is no review at any time. A conviction eliminates your marriage? Is that? Any — Don't you have to get a divorce? You just have to get convicted? It's a good deal. I think it's a better deal to go the other way. But I think that — but I think as a practical matter, Justice Scalia, it would be very straightforward for the Court, were such a claim ever to be raised, to note that there is a much higher floor of due process, frankly, in the criminal arena that would be preconditioned. But she has a contribution to it, and she has, as Justice Scalia said, a husband who's taking tactical steps that are against his interests. So this is a serious question. I very much am troubled by this part of your argument. How do we announce and what rule do we announce? Your Honor, I think in this situation you note that this is an exceptional area of the law where there is no process surrounding the decision the government is making of any kind. I can't think of another area of law where there is a complete absence of process at any stage surrounding a decision that has such a profound impact. I wonder if there is process in that she was allowed to petition that a visa be entertained. There was very substantial process. She was entitled and did file an application for a visa on the husband's behalf. So to say that, oh, there's no process at all, that's not correct. Well, the part of the decision that matters, though, that we think, and that really that I'm pointing to here, is the ultimate decision on the visa. And that's where there is a complete absence of process, where the entire decision making is behind closed doors. Suppose the couple lived in New York and one is convicted of a crime and the spouse who's convicted is convicted of a Federal crime, sent to a ultra-maximum security prison in Colorado. Can the other spouse contest that because that will have the effect of making it virtually impossible for there to be any communication between them? No, Your Honor. What would be the difference? The difference is that in the situation you describe, there is process surrounding the conviction, and the Court has held that the Bureau of Prisons has extraordinary latitude and deference comporting with due process to deal with the assignment of prisoners. But what if there weren't? That just seems to me to be fighting the hypothetical. Let's say there is no process established to seek review of that. Assuming my point to be clear is that either the prisoner in that case has additional due process entrance or the prisoner doesn't, but at the time of the conviction which separates the husband and wife, there is process, and there is not a case. No, I know, but what if there weren't? In other words, does the marital relation entitle the wife to review of the decision to imprison the convicted husband in Colorado rather than New York? No, I don't think it does, because the Court has addressed this, and frankly, the process clause with the habeas requirement, the fact that the spouse has no additional rights even though her marital relationship will be affected. That's correct, Your Honor, because of the rights that are there at the outset of the process. There is no comparable. Well, I'm not aware of rights to contest the placement of a prison after a conviction. I'm trying to think of it. I just don't think there is any. And I think that hypothetical is very apt, and you indicate there's no remedy where there are two citizens living in this country, and that you want us to apply that remedy to a person who's living out of the country, where national security interests are involved. The reason, Justice Kennedy, is that in the situation that we have here, and certainly as it's put to the Court, the Respondent is a United States citizen, and she knows of no reason why her husband does not satisfy the eligibility requirements, and there's been no window into it of any kind. So there is no process around the initial threshold decision that separates the couple. And every other ---- Kagan, I would have thought that all these kind of parade of horribles could have been played out from the Mandel case as well, that you would have thought, oh, my gosh, we're giving all these professors a chance to complain about people going to prison because the professors want to be able to talk to them. And none of that, of course, ever happened. And I'm wondering, why do you think that is? Is there any difference between the two situations, such that we need to worry about the parade of horribles in one but not in the other? I don't think there's any reason to worry about it, because the standard that Mandel set is very, very deferential and generous to the government. The only times that it's going to create an incentive for a lawsuit is where the plaintiffs are convinced that there has been a mistake or an abuse of the process. Maybe there are more incentivized spouses than there are incentivized law professors. But do you think that's possible? No, but law professors are very, very insistent, you know. Look, I think what you're saying, though I'm not certain, is simply you're not saying that the wife should be able to sue to get her husband out of prison, et cetera. But she does have a constitutionally protected interest. But to say a person has an interest is not to say how that protection goes. If you say we have all the examples of what would happen if you say there is an interest and none of them need happen. Now, try it the other way. Suppose you say there is no interest. Then I guess if there's no constitutionally protected interest in living together with your spouse, you can make up a hypothetical. Congress passes a law that says all husbands and wives have to live separately. Period. Is there anyone who thinks that there would be no court action in such a case? I mean, you can say a person has an interest. Then the next question is what kind of protection does the law give to that interest? And you're bringing a case where the answer is virtually none and you want a little bit, but it has the real problems that people have raised. Now, is that a fair description of what you're saying? That's very fair, Your Honor. Well, but I thought you said no. So you now think that the spouse whose husband is convicted and sent to the maximum security prison far away has a constitutionally protected interest with respect to that separation? Your Honor, it's certainly not an interest that we are arguing for. No, no. I know my hypothetical is different from your case. But the reason I point that out is I think the Court, if it's truly concerned about this kind of floodgates problem, which I don't think is realistic for the reasons discussed, the Court can address it fairly, I think, either through saying, yes, in the abstract there's a liberty interest, but one that would never be. It's not just a matter of floodgates. It's a matter of defining the basic right for constitutional purposes. And the basic right is the right to live together, but it is a right and not have to be interfered with through an arbitrary and other. But that apply even if she didn't – she comes in because she has a right to apply for priority status for her spouse. Suppose the woman knows that's right, but he's her husband. I – you seem to be arguing that the husband-wife relationship is the constitutionally protected relationship. So it wouldn't matter if there were no priority status involved. Or what do you get out of the statute that says the wife can apply for priority status for her husband? Well, certainly the statute and the preferences, which go back to 1907, reflect I think Congress is consistent, certainly, with the constitutional value the Court has placed here. And so in that respect, it's helpful. But it's not necessary. You would say the marital relationship, citizen-wife, alien husband, just by virtue of that relationship, she can contest the government's refusal to explain why this person was excluded. That's correct, Your Honor. And I think in terms of the concern about how far this case would go, I think it is meaningful that the Court does not have to deal with a situation as it would in these other circumstances of a threshold finding that led to separation and that involved process. And I – it's actually interesting if the Court looks at Turner v. Safley, Justice O'Connor recognized that there were spouses of these prisoners. They weren't before the Court. But she noted that, you know, their interests might be different or protected differently. Can I ask, Mr. Haddad, and this goes back to my earlier question about why this isn't an APA case. It seems to me if it were an APA case, we wouldn't have to go through all this – these troubles about defining the scope of the right. We could just say this is a person aggrieved for obvious reasons, that she can't live with her husband, and then sort of go on to ask what kind of process she would do under the APA. Why wouldn't that be an easier way to think about this case and to resolve this case? That is an attractive framework, although there are other legal issues that would have to be addressed. Congress has amended the INA to limit the right of action that would be available under the statute. Under the INA, there's some indication that Congress did not want private parties to be able to sue the agency as a statutory matter. So, you know, the Court could certainly remand for further consideration under the APA, but that has not been the case that we have brought, and we think the constitutional ground is the stronger ground. If the Court has no further questions, we will submit. Roberts. Thank you, counsel. Mr. Needle, you have four minutes remaining. Thank you, Mr. Chief Justice. First of all, in terms of protections that have been afforded by the government, Congress enacted a statute referred to in footnote 6 of our brief that every denial under the security grounds for a visa has to be reported to Congress. So Congress has oversight of what is going on here. Secondly, Respondent is proposing a radical departure in due process law, one that is entirely inconsistent with what this Court took as self-evident in the O'Bannon case, that where you have one spouse or one family member who engages in wrongful conduct or has characteristics that disentitle him to benefits or subject him to punishment, that is his problem, his issue, his to litigate this. You know, I think you are over-reading O'Bannon, Mr. Kneedler. I think O'Bannon makes it very clear that a large part of what's going on there is it said the nursing home can do this itself. It was almost like a prudential standing kind of argument, that there is one party that has all this motivation and incentive to challenge this. We don't need all these other people doing it. And that's clearly not the case here. So I think O'Bannon is a very different factual circumstance. Kneedler, Well, but the importance of O'Bannon is that it says that there is no constitutional deprivation of liberty through the indirect impact of action taken against one person by another. Kagan Well, in those circumstances. Kneedler, Well, but, but, no, I think it was, and they used the prison, they used the prison circumstance. But if I could just pick up on what you said. This Court has said on a number of cases that when it comes to the exclusion of aliens, whatever process Congress provides is the process that is due. And here we have process by Congress, but in addition by the executive. A for Sherrari, that is true with respect to aliens outside the United States. As far as, as the wife is concerned, whatever due process interest she has, has been satisfied by what Congress has afforded. That is the way the structure works under our Constitution. If Congress thinks that greater protection is required, it can do that. Sotomayor That's too far a statement, Mr. Kneedler. I can imagine too many hypotheticals where the government could afford or could treat aliens in a non, that are in the United States in an unconstitutional way. Kneedler I'm not saying in the United States. I'm saying the exclusion of aliens. And those statements were made where the alien had arrived at our shores. A for Sherrari, it is true that with respect to an alien abroad, that is correct. If there are additional rights to be afforded to spouses, it should be up to Congress to do it. As Justice Kennedy pointed out, spouses are entitled to petition for eligibility for a spouse to be considered for a visa. Once that petition is granted, the spouse's cognizable interest is completed. The alien then must satisfy on his own terms the elements for admissibility, and that applies whatever the basis for his ability to apply for a visa, whether it's an employment petition, a spousal petition, a tourist visa, whatever it is. And I also wanted to respond to what Justice Kagan or pick up on what Justice Kagan said about facially legitimate. Nothing in Mandel suggests, even if we got to that point, even if the Court thought that there was a cognizable basis for the spouse here, nothing in Mandel suggests that you could look behind the stated reason, that you would never get to classified information or other information underlying the denial. The Court made that perfectly clear. And here we have a facially legitimate statement of the reason for the denial, which is an act of Congress identifying terrorism as the ground. And Congress also decided that further notice is not required in that circumstance, picking up exactly on the point this Court made in Knauf v. Shaughnessy, that it is not necessary to give information to an alien about the basis for his excuse, and a spouse cannot get around that. The history of cons or non-reviewability is extensive, and it is not limited just to the alien. I would point the Court to 8 U.S.C. 1201i and 6 U.S.C. 236f, both of which suggest that the consular officer decisions are not to be reviewed by anybody. Roberts. Thank you, counsel. Counsel, the case is submitted.